UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

' **Eastern District of Kentucky**
**F I L E D**
OCT 0 5 2005
AT LONDON
**LESLIE G. WHITMER**
**CLERK U.S.** DISTRICT COURT

CIVIL ACTION NO. 04-518-GWU

DORIS SIZEMORE,                                                        PLAINTIFF,

VS.                            **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Sizemore

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Sizemore

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged

3

Sizemore

pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

<u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment.  The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health
and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
<u>Id. Accord, Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir.
1987).  Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford
or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242
(6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Sizemore

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Sizemore

physical and mental impairments.   <u>Varley   v.   Secretary of Health and Human</u>
<u>Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Doris Sizemore, was found by an Administrative Law Judge
(ALJ) to have "severe" impairments consisting of rheumatoid arthritis, lupus
erythematous, hypertension, and iron deficiency anemia. (Tr. 16). Nevertheless, the
ALJ determined that Mrs. Sizemore retained the residual functional capacity to
perform medium level exertion with non-exertional restrictions   of occasionally
climbing ladders, ropes, and scaffolds, and proceeded to apply Rules 203.28 and
203.21 of the Commissioner's Medical-Vocational Guidelines (the "grids"), applicable
to a person of the plaintiff's age, education, and lack of work experience, which direct
a conclusion of "not disabled." (Tr. 18-20).  The Appeals Council declined to review,
and this action followed.

On appeal, this Court must determine whether the administrative decision is
supported by substantial evidence.

Although the plaintiff alleged disability due to joint problems which had been
diagnosed as both rheumatoid arthritis and lupus (Tr. 126,283), which caused pain,
swelling, and made it difficult to walk, bend at the knees, or use her hands (Tr. 284-
5), she admitted that her treating physician, Dr. Anita Cornett, had not placed any
specific restrictions on her activity other than a general statement not to use her
joints more than she had to.  (Tr. 303).  She also alleged high blood pressure, but

7

Sizemore

stated that Dr. Cornett had not instructed her to limit her activities for this condition. (Tr. 305). Additionally, she had a left knee problem which made it difficult to stand. (Tr. 289). Mrs. Sizemore testified that she could lift no more than five to ten pounds, stand for one-half hour, walk for 10 minutes, or work continuously doing chores for more than approximately two hours without resting for an hour. (Tr. 284-5, 303-5). However, the medical evidence does not support this degree of limitation.

Records from the plaintiff's treating family physician, Dr. Cornett, showed that on Mrs. Sizemore's first visit in March, 2001, she related that she had "been told" she had lupus and wanted a referral to a rheumatologist. (Tr. 236). Dr. Cornett's examinations did show some tender joints in the fingers, along with slight hypertrophy and tenderness. (Tr. 237). She prescribed medications including Celebrex and, later, Lortab, and made referrals to two rheumatologists, although there is no indication that the plaintiff kept the appointments. (Tr. 226-37). Dr. Cornett diagnosed inflammatory arthritis and, later, rheumatoid arthritis. (Tr. 222-3, 227). A left knee x-ray in January, 2002 was considered unremarkable. (Tr. 238).

Dr. Herbert Villaflores conducted a consultative examination of Mrs. Sizemore on September 15, 2001 and found that, although she was somewhat anxious, the plaintiff had an almost normal physical examination, with upper and lower extremity strength rated four out of five, normal reflexes, sensation, and grip, no joint deformities or decrease in range of motion, no impairment in toe and heel walking, and no difficulty getting on or off the examination table. (Tr. 217). He found

8

evidence for only a "mild restriction" in Mrs. Sizemore's tolerance for stooping, bending, reaching, sitting, standing, ambulation, lifting, carrying, handling objects, or ability to travel. (Tr. 218).

State agency physicians who examined the record in September, 2001 and January, 2002 concluded that Mrs. Sizemore was capable of medium level exertion and occasionally climbing ladders, ropes, and scaffolds, consistent with the ALJ's residual functional capacity finding. (Tr. 239-55).

Dr. Cornett wrote a letter dated May 10, 2002 indicating that Mrs. Sizemore was under her care for arthritis which was "not fully characterized at this time," and suffered from multiple joint pains, intermittent swelling, chronic pain "and disability." (Tr. 257). Other problems included dysfunctional uterine bleeding and iron deficiency despite iron therapy. She added that in her opinion, Mrs. Sizemore was "permanently disabled." (Id.). No specific functional restrictions were given. Subsequent notes were submitted, which show continued treatment, and similar findings on examination, but no specific restrictions. A whole body bone scan was obtained in February, 2004, which showed only "one small punctate area of increased osteoblastic activity at the right side of the L4 level," which was considered to be most likely due to degenerative changes. (Tr. 82).

Dr. Bobby J. Kidd conducted a consultative examination of the plaintiff on April 13, 2004, and also reviewed Dr. Cornett's records through January, 2004. (Tr. 90). Although Mrs. Sizemore complained of joint pain and hypertension, Dr. Kidd

9

found that she had a normal gait, no tenderness, redness, warmth, or swelling of any joint, a normal range of motion in all joints, and a normal neurological examination. (Tr. 86-7). Her hands were not atrophied and she was able to make a fist bilaterally, pick up coins with either hand, and write with the dominant hand without difficulty. (Tr. 86). She was able to walk on her toes and heels, perform a tandem gait, and squat without difficulty. (Tr. 87). However, she was hypertensive on the day of the examination. (Tr. 88). Dr. Kidd's impression was "complaints of 'arthritis' " and hypertension. (Id.). He prepared a specific residual functional capacity form indicating that the plaintiff had no physical restrictions. (Tr. 89).

The plaintiff alleges on appeal that the ALJ did not adequately evaluate her complaints of subjective pain under Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986) and Social Security Ruling (SSR) 96-7p, other than giving a summary of her testimony. However, a review of the hearing decision shows that the ALJ advanced several reasons for not giving the plaintiff's subjective complaints full credibility, including the fact that only mild abnormalities were found on different examinations, that she was given only conservative treatment, that she was capable of performing a variety of postural maneuvers, that she had a normal gait, that she made inconsistent statements regarding her level of activities to the consultative examiner, and that she had failed to keep referrals made by her treating physician. (Tr. 17-18). Accordingly, this allegation of error is without merit.

10

Sizemore

The plaintiff further alleges that the evidence shows that she would be restricted to less than medium level work and would require a sit/stand option, but, other than the plaintiff's testimony, supports the argument by citing only Dr. Cornett's conclusory opinion of disability, which was properly rejected by the ALJ. Dr. Cornett was making a vocational conclusion outside her area of expertise and never placed specific functional limitations on her patient, as Mrs. Sizemore admitted in her testimony.

Finally, the plaintiff argues that the ALJ improperly applied the grids, and that she would be disabled if she were limited to light or sedentary work. Since the plaintiff did not establish that she would be limited to light or sedentary work, this argument is also without merit.

The decision will be affirmed.

This the _____5_____ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11